UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELLEN EMBRY, individually and on behalf of all similarly situated Missouri citizens, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| vs. | ) Case No. 4:19-cv-02785-SEP<br>) |
| T. MARZETTI CO., | )<br>)<br>) |
| Defendant. | ) |

**Memorandum and Order**

This matter is before the Court on Plaintiff Ellen Embry's Motion to Remand (Doc. [16]). For the reasons stated below, Embry's Motion is denied.

**I.      Background**

Embry filed this lawsuit against Defendant T. Marzetti Co. ("Marzetti") in the Circuit Court of the City of St. Louis, Missouri, on behalf of herself and similarly situated Missouri residents.  Doc. [3] at 1.  Embry alleges Marzetti engaged in misleading advertising in violation of the Missouri Merchandising Practices Act ("MMPA") and Missouri common law.  *Id*. at 3. Specifically, she claims Marzetti marketed its brand of salad dressings as being free of preservatives when, in truth, the dressings contain Xanthan Gum.  *Id*. at 2.  This is not Embry's first case against a condiment manufacturer.  *See Embry v. Ventura Foods, LLC*, No. 4:19-CV-2773-SNLJ (E.D. Mo.); *Embry v. Litehouse, Inc.*, No. 4:19-CV-02888-SEP (E.D. Mo.).  Embry

1

purports to bring this action on behalf of all Missouri residents who purchased Marzetti's dressings in the five years preceding her Petition.  Doc. [3] ¶ 31.

Marzetti removed the case to this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Doc. [1] at 2.  Embry challenges the removal, arguing that Marzetti has not shown that the amount in controversy exceeds CAFA's $5 million threshold.  Doc. [16] at 3.  Marzetti's Notice of Removal states the amount in controversy is satisfied by the alleged damages combined with the expected attorneys' fees.  Doc. [1] ¶¶ 12-17.  The parties' dispute centers on whether—and, if so, how—attorneys' fees should be included in the amount in controversy.

## II.     Standard of Review

CAFA permits removal of class actions which (1) include at least 100 putative members, (2) involve an aggregate amount in controversy that "exceeds the sum or value of $5,000,000," and (3) includes at least one class member who "is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2), (d)(5); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010).

Embry argues that the $5 million amount in controversy threshold is not satisfied.  Doc. [16] at 3.  "When a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014).  The party seeking removal bears the burden of establishing federal jurisdiction.  *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017).  Notably, a defendant's burden is "to establish not whether the damages [sought] *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are."

2

*Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 984 (8th Cir. 2019) (internal quotation and citation omitted).

### III.   Discussion

Although Embry does not allege a specific amount of damages, she does request compensatory damages on behalf of the class as well as an award of attorneys' fees.  Doc. [3] at 12.  The parties agree that compensatory damages should equal the sum of what class members paid for Marzetti's salad dressing, which is sold at $4.49 per bottle.  *Id*. ¶¶ 9, 12-13; Doc. [1] ¶¶ 14-15.  But the parties disagree over the calculation of attorneys' fees.

Marzetti argues that the amount in controversy should include an award of attorneys' fees equal to 40% of the claimed damages.  Doc. [1] ¶ 14.  Assuming such an award, Marzetti continues, the class's compensatory damages need only exceed $3,571,428.57 to satisfy the $5 million jurisdictional minimum.  *Id*.  Marzetti then notes that retailers in the St. Louis and Kansas City areas purchased over $5 million worth of its dressings in the last four years alone, making it reasonable to assume the class members' damages exceeded $3,571,428.57 in the five years preceding Embry's Petition.  *Id*. ¶ 17.

Embry advances a number of arguments against Marzetti's position.  Her chief argument is that the Court should not consider future attorneys' fees when calculating the amount in controversy.  Doc. [16] at 4.  Embry believes there is a circuit split on this issue, and she identifies three approaches courts have taken in calculating the amount in controversy:  to include only those fees incurred at the time the case was filed; to include fees incurred up to the point of removal; and to include anticipated attorneys' fees.  *Id*. at 5.  Embry claims the Eighth Circuit has not yet decided which approach to take, so she urges the Court to adopt the second one, citing its logical appeal.  *Id*.

3

While Embry is correct that the Eighth Circuit has not engaged in a full discussion of this issue, the Court has not been silent either.  In *Faltermeier v. FCA US LLC*, for example, the Court found it had CAFA jurisdiction where "it was more likely than not that attorneys' fees could exceed $1.4 million, considering the expected length of the litigation, the risk and complexity involved in prosecuting class actions, and the hourly rates charged."  899 F.3d 617, 622 (8th Cir. 2018).  This statement belies Embry's suggestion that the Eighth Circuit has not decided whether to include future attorneys' fees in the amount in controversy calculations.  Her chief argument therefore fails.

The *Faltermeier* holding also lays waste to Embry's second argument—that attorneys' fees are "costs," which are not considered part of the amount in controversy.  Doc. [16] at 8.  CAFA specifies that the amount in controversy must exceed $5 million "exclusive of interest and costs."  28 U.S.C. 1332(d)(2).  Embry reasons that because the MMPA distinguishes between damages and attorneys' fees, attorneys' fees must be considered "costs," which means they must be excluded from the amount in controversy.  Doc. [16] at 8.  She cites in support the Eighth Circuit's holding in *Pacific Insurance Co. v. Burnet Title, Inc.*, 380 F.3d 1061, 1066 (8th Cir. 2004).

*Faltermeier* contradicts Embry's theory.  There, the Eighth Circuit considered an award of attorneys' fees under the MMPA, evidently unperturbed by the MMPA's distinction between damages and attorneys' fees.  Bound by Eighth Circuit precedent, this Court must therefore reject Embry's argument that attorneys' fees are "costs" for the purposes of calculating the amount in controversy.  Furthermore, Embry's reliance on *Pacific Insurance* is misplaced, as that case did not concern jurisdictional amounts.  *See Embry v. Ventura Foods, LLC*, No. 4:19-CV-2773SNLJ, 2020 WL 3077058, at *3 (E.D. Mo. June 10, 2020).

Embry further asserts that, even if attorneys' fees are included, Marzetti has not carried its burden to prove that the amount in controversy exceeds $5 million. Doc. [16] at 9. According to Embry, Marzetti has not shown that a 40% attorneys' fees award is reasonable and has not produced sufficient evidence of its sales to Missouri residents. *Id*. at 10-11. As noted above, Marzetti need only show by a preponderance of the evidence that this case satisfies the jurisdictional minimum. *Dart Cherokee*, 574 U.S. at 88. If Marzetti makes such a showing, the burden then shifts to Embry to prove that it is legally impossible for the class to recover the jurisdictional amount.[1] *Dammann v. Progressive Direct Ins. Co.*, 856 F.3d 580, 584 (8th Cir. 2017) ("After the party seeking to remove has shown CAFA's jurisdictional minimum by a preponderance of the evidence, 'remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount.'") (quoting *Bell*, 557 F.3d at 956); *see also Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013) ("Even if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard.").

---

[1] Embry claims the Federal Courts Jurisdiction and Venue Clarification Act ("JVCA") and the Supreme Court's decision in *Dart Cherokee* abrogated the legal certainty standard for plaintiffs seeking remand. Doc. [19] at 1. Not so. The JVCA and *Dart Cherokee* abrogated the legal certainty standard *for removing defendants*. *Dart Cherokee*, 574 U.S. at 89 ("*[D]efendants* do not need to prove to a legal certainty that the amount in controversy requirement has been met.") (emphasis added). Embry also selectively quotes the Eighth Circuit's *Pirozzi* decision to suggest that the legal certainty standard applies only where the amount in controversy is unchallenged. Doc. [19] at 4. In *Pirozzi*, the Court exercised its independent duty to examine an uncontested amount in controversy, stating: "When the notice of removal plausibly alleges that the class *might* recover actual damages, punitive damages, and attorneys' fees aggregating more than $5 million, 'then the case belongs in federal court unless it is *legally impossible* for the plaintiff to recover that much.'" 719 F.3d at 983-84 (quoting *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013)) (emphasis in *Pirozzi*). That statement does not remotely imply that the legal certainty standard applies *only* when the amount in controversy is unchallenged. In fact, *Pirozzi* attributes the proposition to the Eighth Circuit's decision in *Raskas*, in which the amount in controversy *was* challenged. 719 F.3d at 887. Tellingly, Embry omits the *Raskas* citation from her brief. Doc. [19] at 4.

5

Embry challenges Marzetti's assumption of a 40% attorneys' fees award as speculative. Doc. [16] at 10.  But Marzetti has produced evidence that a 40% award is possible in this case, *see* Doc. [1] ¶ 14, so Embry must do more than dismiss the potential award as speculative.  *Dart Cherokee*, 574 U.S. at 88 (explaining that "*both* sides must submit proof" during the preponderance of the evidence inquiry) (emphasis added).  Because Embry has neither produced her own evidence nor shown that a 40% attorneys' fees award is so outlandish as to amount to a legal impossibility, her argument fails.

Finally, Embry argues that just because Marzetti sold over $5 million worth of salad dressings to Missouri retailers during the last four years, it does not follow that Missouri residents purchased enough of those products to satisfy the jurisdictional minimum.  Doc. [16] at 12.  Such an outcome is particularly unlikely, Embry says, because Kansas City and St. Louis border neighboring states and likely attract both in-state and out-of-state shoppers.  *Id*.  This argument is also unavailing.  The evidence produced shows that Marzetti sold millions of dollars' worth of its products to Missouri retailers during the relevant time period.  Doc. [1-2]. Embry has produced no evidence to refute these figures, and her efforts to cast doubt on the consumers' residencies are unpersuasive.  *Ventura Foods*, 2020 WL 3077058, at *2 ("[It] is reasonable to assume that dressings sold in Missouri grocery stores—even those near a state line—[are sold] primarily to Missouri consumers.").

In closing, the Court would like to caution Plaintiff's counsel that misrepresenting governing caselaw is sanctionable under the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 11(b) & (c); *see also Meyer v. U.S. Bank Nat. Ass'n*, 792 F.3d 923, 928-29 (8th Cir. 2015) (imposing sanctions under Federal Rule of Appellate Procedure 38 for "flagrantly misrepresent[ing] governing law").  Embry's reply brief contains several mischaracterized

6

quotes and misleading citations.  *See, e.g.*, Doc. [19] at 4 (mischaracterizing quoted text and omitting the citation that contradicts the mischaracterization); *id*. at 12 (introducing quoted text with the word "must" where the quoted case uses the word "may" and providing a Supreme Court citation for text quoted from a district court case).  Including such deception in a reply brief denies the Court the benefit of exposure by opposing counsel, compounding the insult to the Court's intelligence with the waste of its time and resources.  *See Meyer*, 792 F.3d at 928. While lawyers are assuredly expected to advocate vigorously for their clients' positions, they are not permitted to engage in calculated dishonesty.  The Court expects that all future filings will comport with the ethical standards of the legal profession.

    Accordingly,

    **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (Doc. [16]) is **DENIED**.

Dated this   4th   Day of September, 2020.

*Sarah E. Pitlyk*
UNITED STATES DISTRICT JUDGE

7